IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE L. GRAGERT, | ) |
| Plaintiff, | ) |
| vs. | ) Case Number CIV-11-984-C |
| HOWARD H. HENDRICK, Director of Department of Human Services; and MIKE FOGARTY, Director of OKLAHOMA HEALTH CARE AUTHORITY, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff is married to Louise Gragert. On November 30, 2009, Mr. Gragert moved into Highland Park Manor, a nursing home in Enid, Oklahoma. On May 1, 2011, Tim Gragert, the Gragerts' son, gave Mrs. Gragert a promissory note in which he promised to pay $28,800 in 96 monthly installments of $330.28 beginning on May 1, 2011, to purchase a rent house from Mr. and Mrs. Gragert. On June 6, 2011, Mr. And Mrs. Gragert deeded the rent house to Tim Gragert, effective May 1, 2011. On June 16, 2011, the Oklahoma Department of Human Services ("OKDHS") received a Medicaid application for Mr. Gragert. In that application, Mr. Gragert stated that he and Mrs. Gragert owned Medicaid countable resources worth $45,362. Mr. Gragert also reported that after appropriate reductions were made for Mrs. Gragert, he had reportable resources of $1,483.71. On August 4, 2011, OKDHS denied the application, stating that Mr. Gragert had countable resources in excess of $2,000. In the explanation of its determination of countable resources, OKDHS listed the $45,363 claimed

in the latest application plus the note on the rent house valued at $27,343, for a total of $72,796. Of that portion, $43,899 was allocated to Mrs. Gragert, leaving Mr. Gragert with countable resources in excess of the $2,000 limit.

After Defendants' denial of his application for Medicaid benefits, Mr. Gragert initiated this action seeking judicial review of that decision and a determination that he is in fact eligible for Medicaid benefits. On the parties cross-motions for summary judgment, the Court agreed with Defendants' determination that the note was a resource. Plaintiff appealed and the Tenth Circuit reversed. In its opinion, the Tenth Circuit noted that no ruling had been made on whether or not Plaintiff had a valid 42 U.S.C. § 1983 claim, and noted that issue could be resolved on remand. Seizing that opening, Defendants have now filed a second Motion for Summary Judgment raising four arguments for dismissal: 1) the case is moot, as Mr. Gragert began receiving benefits in July of 2012; 2) Plaintiff has failed to identify a statute which creates a private right of action and therefore there is no valid § 1983 claim; 3) Plaintiff's suit is barred by the Eleventh Amendment; and 4) the promissory note is a trust-like device.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir.

1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

1. Trust-Like Device

The Court will consider Defendants' fourth argument first. As outlined above, Mrs. Gragert deeded the rent house to her son in exchange for a promissory note. Defendants now argue that the promissory note is a trust-like device and therefore was a resource available to Mr. Gragert rendering him ineligible for benefits. In response, Plaintiff notes that this

3

Court and another judge in this district have held that identical promissory notes are not trust-like devices.

Plaintiff's position is well founded. In Lemmons v. Lake, CIV-12-1075, the Court rejected the same arguments Defendants make here. (See Dkt. No. 38, pp. 10-11). Defendants offer no argument in their Reply brief that there are distinguishing facts between the present case and Lemmons. Further, Defendants have failed to offer any evidence or argument to refute Plaintiff's evidence that the house is for the sole benefit of the purchaser, and that it is not used or held for the benefit of either Mr. or Mrs. Gragert. Consequently, the Court finds that the promissory note is not a trust-like device and therefore it is not a resource.

2. Valid § 1983 Claim

Defendants' argue that Plaintiff has failed to allege a violation of rights that is remediable via § 1983. According to Defendants, Plaintiff's case raises three statutes, 42 U.S.C. § 1396p(c)(1)(I), 42 U.S.C. § 1396a(a)(10)(C)(i)(III), and 42 U.S.C. § 1396a(r)(2)(A), as giving rise to his claim. Defendants assert that none of these statutes confers a private right to enforce, and therefore Plaintiff lacks standing.

"[T]he primary question in determining whether a statute will support a claim under § 1983 is whether 'Congress intended to confer individual rights upon a class of beneficiaries.'" Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002)). To answer this question, three factors set out by the Supreme Court are considered:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

Blessing v. Freestone, 520 U.S. 329, 340–41 (1997) (internal citations omitted).

Plaintiff asserts that in light of the developments in the case, § 1396p(c)(1)(I) is no longer applicable. Plaintiff offers no argument regarding whether § 1396a(a)(10)(C)(i)(III) and § 1396a(r)(2)(A) give rise to a valid § 1983 action. Rather, Plaintiff sets forth several new statutes arguing each creates an enforceable right. In particular, Plaintiff argues 42 U.S.C. § 1396a(a)(8) requires Defendants to furnish Medicaid to all eligible individuals with reasonable promptness. Defendants object, arguing Plaintiff has amended his case midstream and without leave of Court. The Court is not persuaded that any amendment has occurred and to the extent any has, it will be permitted as Defendants are not prejudiced. From the outset, Plaintiff has complained that Defendants wrongfully denied his eligibility for benefits. (See Dkt. No. 1, p. 1 ("Plaintiff challenges the Oklahoma Department of Human Services ("OKDHS") decision to deny Medicaid benefits for Plaintiff . . . .") and p. 6 ¶¶ 1 and 2). As Plaintiff notes, several courts, including another judge in this district, have held that § 1396a(a)(8) creates a private right of action enforceable through § 1983. See Okla. Chapter of Am. Acad. of Pediatrics (OKAAP) v. Fogarty, 366 F. Supp. 2d 1050, 1108 (N.D. Okla. 2005); Lewis v. N.M. Dep't of Health, 94 F. Supp. 2d 1217, 1235 (D.N.M. 2000), aff'd, 261 F.3d 970 (2001); Shanks-Marrs v. Lake, Case No. CIV-13-64-L (W.D. Okla. 2013) (Dkt. No.

21). Additionally, the First, Third, Fourth, Fifth, and Eleventh Circuits have all held subsection (a)(8) creates a private right of action. See Bryson v. Shumway, 308 F.3d 79, 88-89 (1st Cir. 2002); Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 189 (3d Cir. 2004); Doe v. Kidd, 501 F.3d 348, 356 (4th Cir. 2007); Romano v. Greenstein, 721 F.3d 373, 379 (5th Cir. 2013); and Doe 1-13 v. Chiles, 136 F.3d 709, 719 (11th Cir. 1998). For the reasons explained by these courts, the Court finds § 1396a(a)(8) meets the Blessing test and creates a private right of action.

3. Mootness and Eleventh Amendment

Finally, the Court addresses Defendants' arguments on mootness and the Eleventh Amendment. Defendants argue that the case is now moot because Mr. Gragert was approved for benefits on July 12, 2012. Thus, Defendants argue, there is no longer any relief that the Court can grant. Plaintiff argues the case is not moot, as he is entitled to recover benefits from the date of his application. According to Plaintiff, a case remains to determine if he is entitled to recover benefits he would have received from the date his application should have been approved until the date his benefits actually began. Defendants reject this argument stating such an award would constitute retroactive benefits which are barred by the Eleventh Amendment.

As has been the case in several cases before the Court, the core issue is on what date the Court's grant of injunctive relief becomes effective. Plaintiff argues the Order should be effective as of the date of application for Medicaid, while Defendants argue it can only be effective on the date issued. The parties are in agreement that no court has directly addressed

this question. To resolve the issue, some background on the Eleventh Amendment and the exception carved out of it by Ex parte Young, 209 U.S. 123 (1908), is necessary.

> The Eleventh Amendment confirms that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity. Id. at 99, 104 S.Ct. at 907.

Green v. Mansour, 474 U.S. 64, 68 (1985). Absent some exception, Plaintiff's claim is barred in this Court by the Eleventh Amendment.

> The landmark case of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. Id., at 159-160, 28 S.Ct., at 453-54. The theory of Young was that an unconstitutional statute is void, id., at 159, 28 S.Ct., at 453-54, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." Id., at 160, 28 S.Ct., at 454. Young also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. Id., at 155-156, 159, 28 S.Ct., at 452-53.

Green, 474 U.S. at 68. Explaining the reasoning behind the exception further, the Supreme Court stated: "the availability of prospective relief of the sort awarded in Ex parte Young gives life to the Supremacy Clause. Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." Id. It is this explanation of the purpose behind the exception that is critical in this case. As the case stands today, Defendants have taken a position that was clearly a "violation of federal law" at the time it was made. The Tenth Circuit's decision unequivocally

7

established that Defendants' determination that the promissory note was a resource was incorrect and violated federal law.[*] Despite this clear pronouncement, Defendants insist on maintaining the effect of their improper decision. To date, Defendants refuse to find Plaintiff eligible for benefits from the date of application. Rather, Defendants maintain their position that Plaintiff was required to pass through the penalty period that it wrongly imposed on Plaintiff before he could receive benefits. By their actions, Defendants are engaging in a continuing violation of federal law. Consequently, the Ex parte Young doctrine prevents application of the Eleventh Amendment. See Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1134 (10th Cir. 2001) ("The Court has repeatedly held, however, that suits brought pursuant to Ex parte Young seeking to end a continuing violation of federal law are not barred by the Eleventh Amendment."). This result is bolstered by the fact that Defendants continue to pursue similar actions in other cases. That is, even after a ruling is issued establishing the error of a decision, Defendants continue to carry forward the effect of that decision. While Defendants have the right to appeal an adverse decision, once avenues of appeal are exhausted, they must adhere to those decisions and give them full effect.

---

[*] The Court notes that Defendants have never argued that Plaintiff was ineligible for benefits for any reason other than the existence of the promissory note. Indeed, Defendants' present Motion explains that Plaintiff became eligible for benefits in July 2012 "because the penalty period imposed by DHS for Plaintiff's transfer of resources had expired." Dkt. No. 53, p. 3.

For the reasons set forth above, the Court finds that the Eleventh Amendment does not preclude the Court from issuing an injunction holding that Defendants' determination that the promissory note was a resource was in violation of federal law. Because Defendants' continued reliance on that incorrect decision represents an ongoing violation, the Court may grant injunctive relief. Finally, any injunction issued would date to the date of Plaintiff's application for benefits.

An injunction in accord with the previous paragraph would entitle Plaintiff to payment of benefits from Defendants for time periods that have already passed. These payments are necessary and sufficient to provide relief based on the Court's decision that Defendants should be enjoined from denying Plaintiff's claim for benefits as of the date of application. Thus, any monetary payment is not a retroactive payment, but "relief that serves directly to bring an end to a present violation of federal law . . . ." Papasan v. Allain, 478 U.S. 265, 278 (1986).

## CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment (Dkt. No. 53) is DENIED.

IT IS SO ORDERED this 24th day of January, 2014.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge